**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOHN P. BARNES,

                                        Plaintiff,

            - v -                                              Civ. No. 9:05-CV-153
                                                                    (LEK/RFT)

ROBERT C. GLENNON, Assistant New York State
Attorney General; KAREN A. THORNTON,[1] Legal
Assistant I; LORI MONTROY, Nurse Administrator;
CAROLYN ST. DENIS, Inmate Records Coordinator;
GLENN S. GOORD, Commissioner, N.Y.S. Dept. of
Correctional Services; and THOMAS EAGEN, Director,
Inmate Grievance Program,

                                        Defendants.

**APPEARANCES:**                                **OF COUNSEL:**

JOHN P. BARNES
Plaintiff, *Pro Se*
98-A-2301
Franklin Correctional Facility
62 Bare Hill Road
P.O. Box 10
Malone, NY 12953

HON. ELIOT SPITZER                              DOUGLAS GOGLIA, ESQ.
Attorney General for the State of New York      Assistant Attorney General
Attorneys for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

---

[1] This Court is unsure if Defendant Thornton's name is misspelled as Defendants' Answer names her as "Karen Thompson" and Defendants' Memorandum of Law in Support of their Motion spells this Defendant's last name as "Thorton." *Compare* Dkt. No. 15, Answer *with* Dkt. No. 25, Defs.' Mem. of Law at p. 10. Therefore, this Court will refer to this Defendant utilizing Plaintiff's initial spelling.

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff John P. Barnes brings a civil action pursuant to 42 U.S.C. § 1983, alleging violations of his privacy rights under the Fourteenth Amendment, physician-patient privilege, and violations of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. 104-191, 110 Stat. 1936.[2]  Dkt. No. 4, Am. Compl. at § 7.  Defendants bring this Motion for Judgment on the Pleadings.  Dkt. No. 25.  Plaintiff opposes the Motion.  Dkt. No. 33.  For the reasons to follow, it is recommended that the Motion for Judgment on the Pleadings be **granted**.

## I. FACTS

The following facts are derived from the Amended Complaint, which, on a motion for judgment on the pleadings, must be taken as true.[3]  This case arises out of a previously commenced state *habeas corpus* proceeding brought by Barnes in the New York State Supreme Court in Franklin County.  *See* Am. Compl. at § 6; Dkt. No. 25, Douglas J. Goglia Decl., dated Dec. 8, 2005, Ex. 1, Robert C. Glennon Affirm., dated June 23, 2005, Ex. A, *Habeas* Petition.  Plaintiff's *habeas* petition stated, in part, that Plaintiff pled guilty induced by a promise that he would receive "the best medical care" for his cancer and other medical conditions, but in fact, he did not receive "adequate and proper" medical treatment, and that he was mentally incapacitated due to medical conditions at

---

[2] Plaintiff also asserts a plethora of other violations including violations of his privacy rights under New York State law, violations of the First, Fourth, and Fourteenth Amendments for cruel and unusual punishment, discrimination, access to the courts, unreasonable seizures, due process, and equal protection.  Dkt. No. 4, Am. Compl. at § 7. However, Plaintiff provides no factual basis as to any of these claims and summarily alleges these claims.  Plaintiff does not address any of these claims beyond the bare allegations in the Amended Complaint.  *See* Dkt. No. 33, Pl.'s Resp. Therefore, the Court will not address these claims and recommends dismissal of these alleged violations.

[3] To the extent other facts are necessary to understand Plaintiff's claim, the Court will utilize Exhibits provided by Defendants which are public records and permitted per the motion for judgment on the pleadings standard.  *See infra* Part II.A.

the time the plea was made.  *See* Am. Compl. at § 6; Glennon Affirm., Ex. A, *Habeas* Petition at pp.

1-2 & 11.  Because of the medical claims made by Plaintiff in the petition, on March 10 and 19,

2004, Defendant Glennon, the Assistant Attorney General ("AAG") assigned to the case, requested

medical authorization from Plaintiff to receive health records.  Am. Compl. at § 6 at ¶ A.  Plaintiff

did not provide Defendant Glennon with the authorization to have the medical records released.  *Id.*

On October 20 and 26, 2004, Plaintiff learned that on March 1, 28, and/or 29, 2004, Defendants

Montroy and St. Denis had disclosed and provided Plaintiff's medical records to Defendants

Glennon and Thornton, legal assistant to AAG Glennon.  *Id.* at ¶ B.

On August 23 and 31 and September 23, 2004, Plaintiff filed requests, pursuant to N.Y. PUB.

HEALTH LAW § 18, to receive access to his medical records and to account for those records that

were disclosed by Defendants Montroy and St. Denis.  *Id.* at ¶ C.  Plaintiff then filed a grievance in

order to compel Defendant Montroy to provide Plaintiff with his medical records since none had

been received.  *Id.* at ¶ D.  Subsequently, Plaintiff filed a Freedom of Information Law ("FOIL")

request under New York law, on October 25, 2004, to receive the information regarding the

disclosure of his medical records.  *Id.*

As for Defendants Goord and Eagen, Plaintiff contends that they are responsible for the

"unlawful and wrongful policies, patterns, and practices relating to [P]laintiff's care and custody[.]"

*Id.* at ¶ K.  This includes deliberate indifference to his medical needs, harassment, retaliation, denial

of access to the courts, failure to properly supervise their employees, an unfair grievance system,

failure to maintain safe environments, and violations of Plaintiff's substantive and procedural due

process rights.  *See* Am. Compl. at ¶ K (i)-(viii).

## II.  DISCUSSION

### A.  Motion for Judgment on the Pleadings Standard

FED. R. CIV. P. 12(c) states, in part, that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  The standard under FED. R. CIV. P. 12(c) is essentially the same as that for a motion to dismiss under FED. R. CIV. P. 12(b)(6).  *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).  Upon a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), a court may dismiss a complaint "only if 'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would **entitle** him to relief.'"  *Equal Employment Opportunity Comm'n v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000) (emphasis in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) & citing *Drake v. Delta Air Lines, Inc.*, 147 F.3d 169, 171 (2d Cir. 1998) (quoting *Conley*)); *see also Green v. New York State Dep't of Corr. Serv. et al*, 2003 WL 22169779, at *1 (N.D.N.Y. Aug. 27, 2003).  Furthermore, "the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff."  *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999); *see also Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (citations omitted).  Additionally, "[i]n assessing the legal sufficiency of a claim [under 12(b)(6)], the court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference . . . and documents that are integral to plaintiff's claims, even if not explicitly incorporated by reference."  *Green*, 2003 WL 22169779, at *1 (internal quotation marks and citations omitted) (alterations in original).  The court may also consider "matters of which judicial notice may be taken[,]" including public records and public court documents, such as complaints filed in state court.  *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993);

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).

### B.  Right to Privacy and Physician-Patient Privilege

Plaintiff claims that his Fourteenth Amendment right of privacy was violated when Defendants Glennon and Thornton had access to his medical and psychological records as provided by Defendants Montroy and St. Denis without prior consent or written authorization from Plaintiff. Am. Compl. at § 6 at ¶¶ A & B.  Plaintiff further claims that the physician-patient privilege was violated based on the same reasoning.  Am. Compl. at §§ 6 at ¶ C & 7 at Second Cause of Action.

"[A] [p]laintiff's privacy right in his medical records is neither fundamental nor absolute." *Crawford v. Manion*, 1997 WL 148066, at *1 (S.D.N.Y. Mar. 31, 1997) (citing *Whalen v. Roe*, 429 U.S. 589, 603-04 (1977) & *Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir. 1995) for the proposition that "release of medical records did not violate a fundamental Constitutional right")) (further citation omitted).  When an inmate files suit against prison officials, subsequent release of "medical records in defense of litigation does not violate any right of the inmate[.]"  *Woods v. Goord*, 2002 WL 731691, at *11 (S.D.N.Y. Apr. 23, 2002) (citations omitted).  The waiver of one's right to privacy in medical records occurs when a plaintiff places "his medical condition at issue in a lawsuit."  *Gill v. Gilder*, 1997 WL 419983, at *3 (S.D.N.Y. July 28, 1997) (citing *Crawford v. Manion*, 1997 WL 148066, at *1; *Doe v. Marsh*, 918 F. Supp. 580, 585 (N.D.N.Y. 1996) (further citations omitted)); *see also Manessis v. New York City Dep't of Transp.*, 2002 WL 31115032, at *2 (S.D.N.Y. Sept. 24, 2002).  In addition "privacy rights in medical records can be overcome by a strong government interest."  *Crawford v. Manion*, 1997 WL 148066, at *2 (citing *Doe v. City of*

*New York*, 15 F.3d 264, 269 (2d Cir. 1994) which stated that "the city's interest in disseminating information . . . must be 'substantial' and must be balanced against Doe's right to confidentiality") (further citations omitted).

Plaintiff's claim that his right of privacy was violated in regards to his medical records is without merit. Plaintiff brought a state *habeas corpus* petition in Franklin County. Glennon Affirm., Ex. A, *Habeas* Petition. Within the petition, Plaintiff attacked the validity of his plea on several grounds, namely that he did not receive proper medical treatment "promised" to him by the court for his cancer and other medical conditions. *Id.* at pp. 2-14; Dkt. No. 25, Defs.' Mem. of Law at pp. 2-3. Plaintiff detailed his physical and mental conditions by which he suffered in relation to the treatment he did not receive. Glennon Affirm., Ex. A, *Habeas* Petition at pp. 2-6. In addition, and most importantly, Plaintiff stated at the time he entered into the plea, he was under the influence of drugs and was suffering from mental disease, therefore, his mental capacity was affected thereby rendering the plea invalid because the plea was not entered into knowingly, voluntarily, or intelligently. *Id.* at p. 11. This critical attack on the plea placed his medical condition at issue.[4] These claims regarding his medical issues at the time of the plea and subsequent to it would prompt defense counsel and the like to seek medical records based upon such assertions to assess the validity of the claims.

Plaintiff additionally argues that the medical records were wrongfully disclosed to the state courts. However, the issue of disclosure was presented by a petition to the New York State Court of

---

[4] Plaintiff seeks to make a distinction between a "lawsuit" whereby a waiver can occur and a "special proceeding" by which he claims the petition was heard. Dkt. No. 33, Pl.'s Resp. at p. 5. Despite Plaintiff's notion, a waiver occurs when the medical condition is put at issue regardless of the procedural vehicle by which a claim is brought. *See* Glennon Affirm., Ex. A, *Habeas* Petition.

Claims.  Goglia Decl., Ex. 3, Decision and Order, dated Oct. 11, 2005.  In defending that litigation,

AAG Glennon submitted an Affirmation addressing the issue of the medical records.  Glennon

Affirm., dated June 23, 2005.  Within the Affirmation, Defendant Glennon stated that in late April

or early May 2004, well after the motion to dismiss had been filed in regards to the *habeas corpus*

petition on April 9, 2004, the Attorney General's office received Plaintiff's medical records from

Defendant St. Denis.  *Id.* at ¶ 14.  The medical records were sent among eight hundred and five (805)

pages of other materials sought in regards to other defenses raised by Plaintiff.  *Id.*  Defendant

Glennon asserts that these records "have not been read or copied, nor have the rubber bands around

them when they arrived ever been removed.  They and the other administrative materials will remain

in our file until Petitioner's appeal . . . is decided or otherwise finally disposed of."  *Id.*  The motion

to dismiss was decided on procedural grounds and did not discuss the merits of the petition.  *Id.*, Ex.

E, *Habeas* Decision, dated Sept. 30, 2004.

Although the release of the medical records was not pursuant to a discovery order or by

consent, the release, nevertheless, did not violate Plaintiff's constitutional right to privacy since

medical conditions were at the heart of the argument presented by Plaintiff in his *habeas corpus*

petition attacking the plea upon which he was sentenced.  Clearly it was legitimate to seek medical

records, though they were ultimately never used as the petition was not decided upon the merits, but

instead was based upon procedural grounds.  The fact as to how the records were received does not

negate the fact that Plaintiff placed his numerous medical conditions ***at issue***.  Also, the government

had a strong interest in challenging Plaintiff's assertions of medical incapacity as it led to the

sentence imposed.  Even though the medical records were received, they were never used in the

litigation and remain concealed from the public and even the courts as the documents were not

presented nor necessary in the defense of any litigation.[5]  Plaintiff has not been harmed by the release of the records, since, as noted, they were never published to anyone.

For the above noted reasons, Plaintiff's assertions in the state *habeas corpus* petition amounted to a waiver of his right of privacy in his medical records.

As to Plaintiff's claim of a violation of the physician-patient privilege, we note that Federal Rule of Evidence 501 is applicable in addressing the issue of privilege.  FED. R. EVID. 501 states that privilege shall be determined by common law but if  "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."  However, if an action for relief is commenced pursuant to 42 U.S.C. § 1983, then a court must apply federal law.  *Lupowitz v. Montefiore Med. Ctr.*, 1997 WL 4577, at *2 (S.D.N.Y. Jan. 6, 1997).  Federal law does not recognize the physician-patient privilege because this privilege did not exist at federal common law.  *Id.* (citing *Whalen v. Roe*, 429 U.S. at 602 n.28; *In re Doe*, 711 F.2d 1187, 1193 (2d Cir. 1983) (further citation omitted)); *see also Manessis v. New York City Dep't of Transp.*, 2002 WL 31115032, at *2.

Plaintiff's assertion that his physician-patient privilege was violated cannot be sustained.  As Plaintiff's current claim for relief is instituted through a § 1983 action, federal law applies and as such, no physician-patient privilege is recognized.  Nonetheless, if the privilege existed, it was waived by placing his medical condition, the subject matter of the litigation, at issue  *See United States v. Bilzerian*, 926 F.2d 1285, 1293 (2d Cir. 1991); *In re Von Bulow*, 828 F.2d 94, 102-03 (2d

---

[5] This Court also notes that no medical records were disclosed as a part of this current litigation.

Cir. 1987) (finding a privilege cannot be used as a shield and a sword).

For the all reasons stated above, it is recommended that the Defendants' Motion for Judgment on the Pleadings be **granted** as to Plaintiff's claimed violations of his right to privacy and physician-patient privilege.

### C.  HIPAA Policies

Plaintiff claims that Defendants violated his privacy rights under HIPAA when medical records were disclosed.  Am. Compl. at § 7, First Cause of Action.

Congress enacted the Health Insurance Portability and Accountability Act of 1996, Pub.L. 104-191, 110 Stat. 1936, which provides that the Secretary for Health and Human Services ("Secretary") has "the authority to make final regulations concerning the privacy of individually identifiable health information."  *Nat'l Abortion Fed'n v. Ashcroft*, 2004 WL 555701, at *2 (S.D.N.Y. Mar. 19, 2004); 42 U.S.C. §§ 1320d through1320d-8.  HIPAA allows for health information to be disclosed for judicial and administrative proceedings.  45 C.F.R. § 164.512(e). Disclosure can be obtained through several means, including when it is in response to a discovery request during litigation or pursuant to a court order.[6]  45 C.F.R. § 164.512(e)(1)(i) & (ii).

The Supreme Court has stated that "the fact that a federal statute has been violated and some

---

[6] HIPAA unequivocally permits health care providers and other covered entities to disclose protected health information *without* the consent of the patient in the context of judicial proceedings.  45 C.F.R. § 164.512(e); *Bayne v. Provost*, 359 F. Supp. 2d 234, 237 (N.D.N.Y. 2005) (citations omitted) (emphasis added).  However, a provision or requirement that falls under HIPAA "shall not supersede a contrary provision of State law, if the State law imposes requirements, standards, or implementation specification that are more stringent than the requirements, standards, or implementation specifications imposed under the regulation."  *Nat'l Abortion Fed'n*, 2004 WL 555701, at *3 (citation omitted); 45 C.F.R. § 160.203(b); *see also* 42 U.S.C. § 1320d-7.  State law will be more stringent if it "prohibits or restricts a use or disclosure in circumstances under which such use or disclosure otherwise would be permitted . . . ."  45 C.F.R. § 160.202(1).  New York law states that a patient must consent before disclosure.  N.Y.C.P.L.R. 4504(a); *Nat'l Abortion Fed'n*, 2004 WL 555701, at *3.  Nevertheless, this argument becomes moot as Plaintiff cannot sustain a cause of action under HIPAA.  *See infra* pp. 10-13.

person harmed does not automatically give rise to a private cause of action in favor of that person."

*Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) (quoting *Cannon v. University of*

*Chicago*, 441 U.S. 677, 688 (1979)).

Seemingly, the statutory provision under which Plaintiff seeks to hold Defendants liable

prohibits wrongful disclosure of individually identifiable health information.[7] 42 U.S.C. § 1320d-

6(a)(2) & (3).[8] If a person were to violate this provision, the statute sets forth monetary and criminal

penalties to be assessed against that person.[9] 42 U.S.C. §§ 1320d-1320d-8 does not confer a private

cause of action to any particular class of individuals. *See University of Colorado Hosp. Auth. v.*

*Denver Publ'g Co.*, 340 F. Supp. 2d 1142, 1144 (D. Colo. 2004) (citations omitted). Congress

clearly provided a remedy within the statute when there is wrongful disclosure, as evidenced by the

---

[7] According to 42 U.S.C. § 1320d(4),

[t]he term "health information" means any information, whether oral or recorded in any form or medium, that-
(A) is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university or health care clearinghouse; and
(B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

[8] 42 U.S.C. § 1320d-6(a) states that:

A person who knowingly and in violation of this part-
(1) uses or causes to be used a unique health identifier;
(2) obtains individually identifiable health information relating to an individual; or
(3) discloses individually identifiable health information to another person,
shall be punished as provided in subsection (b) of this section.

[9] 42 U.S.C. § 1320d-6(b) states:

A person described in subsection (a) of this section shall-
(1) be fined not more than $50,000, imprisoned not more than 1 year, or both;
(2) if the offense is committed under false pretenses, be fined not more than $100,000, imprisoned not more than 5 years, or both; and
(3) if the offense is committed with the intent to sell, transfer, or use individually identifiable health information for commercial advantage, personal gain, or malicious harm, be fined not more than $250,000, imprisoned not more than 10 years, or both.

*-10-*

possible imposition of monetary sanctions and criminal penalties by the Secretary of HHS or the

State.  42 U.S.C. § 1320d-6(b).  Such subsection clearly monitors those individuals who engage in

the prohibited conduct.  No where does this statute, either explicitly or implicitly, confer to private

individuals a right of enforcement.  *See University of Colorado Hosp. Auth.*, 340 F. Supp. 2d at

1145; *Munoz, et al. v. Island Fin. Corp.*, 364 F. Supp. 2d 131, 136 (D. P.R. 2005) (citation omitted);

*O'Donnell v. Blue Cross Blue Shield of Wyoming*, 173 F. Supp. 2d 1176, 1180 (D. Wyo. 2001);

*Johnson v. Parker Hughes Clinics*, 2005 WL 102968, at *2 (D. Minn. Jan. 13, 2005); *Ass'n of Am.*

*Physicians & Surgeons, Inc. v. United States Dep't of Health and Human Servs.*, 224 F. Supp. 2d

1115, 1129 (S.D. Tex. 2002).

Furthermore, 42 U.S.C. § 300gg-22 mandates either the State or the Secretary to enforce the

provisions of HIPAA.  42 U.S.C. § 300gg-22(a) & (b); *see also O'Donnell v. Blue Cross Blue*

*Shield of Wyoming*, 173 F. Supp. 2d at 1179-80 (holding "[t]here are no provisions made in the

statute for private enforcement when neither the state, nor the Secretary undertake enforcement

action.").  "HIPAA provides for no federal cause of action; instead, [] HIPAA provides for an

enforcement mechanism for the Secretary of Health and Human Services."  *Means v. Indep. Life &*

*Accident Ins. Co.*, 963 F. Supp. 1131, 1135 (M.D. Ala. 1997).

As a result, this Court finds that Plaintiff cannot sustain this HIPAA claim since there is no

private cause of action stemming from HIPAA.  Only the State of New York or the Secretary can

bring a cause of action on behalf of Barnes for a violation of HIPAA by any of the Defendants.

Therefore, it is recommended that the Motion for Judgment on the Pleadings be **granted** as to the

HIPAA claim.

### D.  Personal Involvement

Plaintiff asseverates that Defendants Goord and Eagen are liable and responsible for the "unlawful and wrongful policies, patterns, and practices relating to [P]laintiff's care and custody[.]" Am. Comp. at ¶ K.  Plaintiff alleges these Defendants violated a number of Plaintiff's rights.  *Id.*; *see also supra* note 2.

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  However, if a plaintiff seeks to bring a § 1983 action for supervisory liability, there needs to be a showing of personal involvement by the supervisor.  *Id.* at 144.  "'Absent some personal involvement by [the supervisory official] in the allegedly unlawful conduct of his subordinates,' he cannot be liable under section 1983." *Id.* at 144-45 (quoting *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987)) (alterations in original).  However, liability on the part of the supervisor may exist

> in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation, or 5) failure to act on information indicating that unconstitutional acts were occurring.

*Id.* at 145 (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)) (further citations omitted).

Here, Plaintiff does not allege any personal involvement by either Defendant Goord or Eagen.  *See* Am. Compl. at § 6.  Neither can Plaintiff sustain a claim for supervisory liability on the part of Eagen as Plaintiff does not state whom he was supervising.  *Id.*  Most notably, the list of violations alleged are broad generalizations of causes of action available and contain no factual

support in which Plaintiff could assert any claims.  *Id.*  As for Goord, a liberal construction of Plaintiff's Complaint leads us to surmise that Plaintiff claims Goord created a policy or custom that sanctioned conduct, namely the unauthorized disclosure of his medical records, which amounts to a constitutional violation.  However, as extensively discussed above, there was no constitutional violation as Plaintiff put his medical condition at issue and furthermore, Plaintiff cannot bring a claim under HIPAA.  *See supra* Parts II.B & C.  Thus, there is no supervisory liability.

Accordingly, it is recommended that the Motion for Judgment on the Pleadings be **granted** as to Defendants Goord and Eagen.

### E.  Absolute Immunity

Although the Court recommends granting the Motion based on the waiver of privacy rights, nonexistence of the physician-patient privilege, and failure to sustain a private cause of action under HIPAA, the Court will alternatively address Defendants' other arguments.   Defendants Glennon, and Thornton claim absolute immunity for any alleged violations resulting from medical records being obtained in defense of Plaintiff's state court *habeas corpus* petition.  Defs.' Mem. of Law at pp. 7-11.

Absolute immunity is limited to a "class of officials and functions."  *Spear v. Town of West Hartford*, 954 F.2d 63, 66 (2d Cir. 1992) (citations omitted) (extending absolute immunity to executive branch of a municipality).  As a general legal proposition, absolute immunity is conferred upon prosecutors when a civil complaint regarding the prosecutor's role in the criminal process is initiated.  There, the law is well-settled in that "prosecutors sued under 42 U.S.C. § 1983 are entitled to absolute immunity from claims for damages arising out of prosecutorial duties that are intimately

associated with the judicial phase of the criminal process." *Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2d Cir. 2001) (internal quotation marks and citations omitted) (advocacy functions are protected).  The Supreme Court has stated that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273-74 (1993) (noting that those acts undertaken "must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made"); *Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998) (commenting that the Supreme Court "has identified 'evaluating evidence and interviewing witnesses' as falling on the absolute immunity side of the line, leaving 'searching for the clues and corroboration' that might lead to a recommendation for an arrest on the qualified immunity side" (quoting *Buckley*)); *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (stating that the official "is also [absolutely] immune for conduct in preparing for [initiating a prosecution or presenting a case for trial]; for example, evaluating and organizing evidence for presentation at trial or to a grand jury").  Qualified immunity, on the other hand, will attach if the prosecutor is instead acting in an investigative or administrative capacity.  *Buckley v. Fitzsimmons*, 509 U.S. at 273-74 (holding that a prosecutor is not entitled to absolute immunity and can receive qualified immunity "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer"); *Bernard v. County of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004); *see also Parkinson*, 238 F.3d at 150.  Courts then must examine the "nature of the function performed" in assessing whether absolute immunity will attach.  *Blouin v. Spitzer*, 356 F.3d 348, 357 (2d Cir. 2004) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)).  Thus, "[i]n

determining which persons are covered by an extension of the immunity, the Supreme Court follows

a functional approach, under which absolute immunity flows not from rank or title or location

within the Government, but from the nature of the responsibilities of the individual official." *Oliva*

*v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985))

(internal quotation marks omitted).  In addition, an absolute immunity template is applicable to

government attorneys who initiate and ***defend civil suits***.  *Spear*, 954 F.2d at 66 (emphasis added)

(citing *Imbler v. Pachtman*, 424 U.S. 409, 430-31(1976); *Barrett v. United States*, 798 F.2d 565,

572 (2d Cir. 1986) (further citations omitted)).

Whether the government official receives absolute immunity depends upon "the scope of the

delegated discretion and whether the position entails making decisions of a judicial nature - i.e.,

decisions requiring the application of governing rules to particular facts, an exercise of reasoned

judgment which could typically produce different acceptable results." *Blouin v. Spitzer*, 356 F.3d at

364 (internal quotation marks and citations omitted).

In this case, Defendant Glennon was a government attorney performing his duty to defend a

*habeas* petition brought by Barnes in Franklin County.  Defs.' Mem. of Law at p. 9; Glennon

Affirm., Ex. A, *Habeas* Petition.  Plaintiff claimed within his petition that he pled guilty due to a

promise of medical care for physical and mental medical conditions suffered by Plaintiff.  *Id.*, Ex.

A, *Habeas* Petition at pp. 2-6.  Plaintiff also attacked the validity of his plea based on medical

conditions suffered by him at the time of the plea.  *Id.* at p. 11.  In responding to the petition, AAG

Glennon sought medical records due to the nature of Plaintiff's petition outlining several medical

issues. *Id.*, Ex. C, Glennon Lt., dated Mar. 10, 2004.[10]  Nevertheless, obtaining these medical

records seemingly falls within the category of acting within an investigative or administrative

capacity as opposed to evaluating evidence or advocating for the state at trial which would fall

within duties entitling one to absolute immunity.  Medical records are normally obtained through the

discovery process, which would clearly be considered an investigative stage and in regards to

*habeas corpus* petitions, at least in federal court, discovery is permitted only in certain

circumstances.  *See* Rule 6 Governing Section 2254 Cases.  Moreover, obtaining those records

would not inextricably be associated with the judicial phase of the litigation.  Therefore, Defendant

Glennon would not be entitled to absolute immunity, however, the Court will consider whether

Glennon may be eligible for qualified immunity.

       As for Defendant Thornton, the fact that her position is that of "Legal Assistant" has no

bearing on whether absolute immunity may attach as the Second Circuit has stated that absolute

immunity does not flow from rank or title within the Government, but rather from the nature of the

responsibilities of the individual.  Therefore, the Court must examine the nature of the function

performed by Defendant Thornton.  Defendant claims that Thornton's acts were essentially the same

as Defendant Glennon in that she "engaged in the course of preparing the defense to the *habeas*

*corpus* petition filed by plaintiff in state court."  Defs.' Mem. of Law at p. 10.  Despite Defendant's

assertion and although the function of a legal assistant may well be intertwined with that of an AAG

defending a lawsuit inasmuch as research may be conducted or papers might be sought, the scope of

---

[10] The Court may properly consider this letter as it was provided to the New York State Court of Claims in the matter of *Barnes v. The State of New York*, Claim No. 110136 (N.Y. Ct. of Claims), in opposition to Barnes' omnibus motion.  Goglia Decl. at ¶ 2; *see supra* Part II.A. (noting that this Court may properly take judicial notice of and consider public court documents).

*-16-*

the position would not be one in which a legal assistant would make decisions of a judicial nature,

namely making decisions that would require the application of governing rules to particular facts.

*See Blouin v. Spitzer*, 356 F.3d at 364.  Unlike a law clerk to which the Defendant is compared, a

law clerk's duties are more inherently judicial in nature as opposed to a legal assistant.[11]  *See* Defs.'

Mem. of Law at p. 10.  It would seem that Defendant Thornton only requested and obtained the

medical records.  *Id.* at p. 1.  The Supreme Court has stated that where a prosecutor is acting in an

investigative or administrative capacity, then only qualified immunity may attach.  *See Buckley v.*

*Fitzsimmons*, 509 U.S. at 273-74.  Presumably the same analysis applies to those government

attorneys and staff performing that type of function that are civil in nature.  Since we find that

Defendant Glennon's role was investigative, Thornton's role could certainly not be more involved,

and, thus, any alleged wrongdoing by Defendant Thornton is better analyzed in terms of qualified

immunity.

    Thus, it is recommended that the Motion for Judgment on the Pleadings be **denied** as to

Defendants Glennon and Thornton on the basis of absolute immunity.

### F.  Qualified Immunity

    Defendants assert that even if this Court were to conclude that the Amended Complaint not

be dismissed based on its previous arguments, the Amended Complaint should nevertheless be

dismissed based on the doctrine of qualified immunity as to all Defendants.  Defs.' Mem. of Law at

---

[11] The Second Circuit has stated that "the work done by law clerks is supervised, approved, and adopted by the judges who initially authorized it. . . . Law clerks are simply extensions of the judges at whose pleasure they serve." *Oliva v. Heller*, 839 F.2d 37, 40 (2d Cir. 1988) (citing *Oliva v. Heller*, 670 F. Supp. 523, 526 (S.D.N.Y. 1987)).  The court further noted that "for purposes of absolute judicial immunity, judges and their law clerks are as one."  *Id.* (quoting *Oliva v. Heller*, 670 F. Supp. at 526).  This argument is similar to the one set forth by Defendant Thornton as the claim is that a legal assistant is merely an extension of the AAG.

pp. 11-12.

The Supreme Court has set forth a two-part test to determine whether qualified immunity is applicable to a defendant. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).  The court must first ask, viewed in a light most favorable to the plaintiff, whether the facts alleged show a constitutional violation. *Id.*; *see also Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004).  If no constitutional violation is established, the inquiry need not go further. *Saucier v. Katz,* 533 U.S. at 201; *Sira v. Morton*, 380 F.3d at 69.  If a constitutional violation can be established, then the second part of the test is to determine "whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. at 201; *Sira v. Morton*, 380 F.3d at 69.  Accordingly, "[i]f a reasonable officer could have believed that the challenged conduct was lawful at the time of the violation, then qualified immunity bars the claim." *Sira v. Morton*, 380 F.3d at 69 (citing *Saucier v. Katz,* 533 U.S. at 202 & *Luna v. Pico,* 356 F.3d 481, 490 (2d Cir. 2004)).[12]

Thus, qualified immunity shields "government officials from liability for civil damages when their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *African Trade & Info. Center, Inc. v. Abromaitis*, 294 F.3d 355, 359 (2d Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Mollica v. Volker*, 229 F.3d 366, 370 (2d Cir. 2000).  This also applies "insofar as it was objectively

---

[12] However, the Second Circuit has held that the two-step approach is not required in certain limited circumstances, such as where the constitutional right is dependent on an unresolved issue of state law, the constitutional violation need not be resolved first and the Court may, instead, proceed directly to the question of whether the constitutional right was clearly established. *Ehrlich v. Town of Glastonbury,* 348 F.3d 48, 57-60 (2d Cir. 2003). Another limited circumstance exists where "the purported constitutional right violated is not 'clearly established[.]'" *Koch v. Town of Brattleboro*, 287 F.3d 162, 166 (2d Cir. 2002).

reasonable for [the government officials] to believe that their acts did not violate those rights."
*Mollica v. Volker*, 229 F.3d at 370 (internal quotation marks and citations omitted); *see also*
*Anderson v. Creighton*, 483 U.S. 635, 641 (1987).  The objectively reasonable test will be met "'if
[officials] of reasonable competence could disagree' on the legality of the defendant's actions."
*Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341
(1986) (further citation omitted)).

In order for the constitutional right to be clearly established, three elements must be met: "1)
. . . [that] the right in question [be] defined with reasonable specificity; 2) [that] the decisional law
of the Supreme Court and applicable circuit court support the existence of the right in question; and
3) [that] under preexisting law a reasonable defendant official would have understood that his or her
acts were unlawful."  *Mollica*, 229 F.3d at 371 (internal quotation marks and citations omitted)
(alterations in original).

As for Defendants Glennon and Thornton, since a recommendation is made that absolute
immunity does not apply, the Court must determine if qualified immunity is applicable since the
duties of both in obtaining the medical records would be considered investigatory, as noted above.
*See supra* Part II.E.  Plaintiff contends that AAG Glennon obtained and disclosed his medical
records and Defendant Thornton is accused of violating Plaintiff's right of privacy as she requested
and obtained Plaintiff's medical records without Plaintiff's consent or authorization.

Plaintiff's claim to a right of privacy in his medical records has been dispelled considering
his state *habeas corpus* petition focused on his medical conditions as the reason to attack his plea,
thus placing his medical condition at issue.  As previously stated, there is no constitutional violation

in regards to Plaintiff's right to privacy under the Fourteenth Amendment. *See supra* Part II.B.

Furthermore, Plaintiff cannot sustain a claim under HIPAA as there is no private cause of action

available. *See supra* Part II.C. Thus, as there has been no violation of a statutory or constitutional

right, the Court need not make any further inquiries and Defendants Glennon and Thornton would

be entitled to qualified immunity.

As for Defendants Montroy and St. Denis, Plaintiff claims that his right to privacy and

physician-patient privilege was violated when these Defendants released and disclosed to

Defendants Glennon and Thornton his medical records. In addition, Plaintiff claims that Defendants

Goord and Eagen unlawfully and wrongfully created policies, patterns, and practices relating to

Plaintiff's care and custody. As noted above, Plaintiff placed his medical condition at issue, thus

waiving his right to privacy in his medical records. No constitutional violation has been established

as to that claim. Additionally, in terms of the physician-patient privilege, federal law does not

recognize the privilege and as such, there is no statutory or constitutional violation in this regard as

well, and indeed if a privilege existed, it was waived. Since no constitutional violation has been

established in any respect, the Court need not evaluate the second part of the test set forth by the

Supreme Court.

Therefore, it is recommended that Defendants Glennon, Thornton, Montroy, St. Denis,

Goord, and Eagen are entitled to qualified immunity and that the Motion for Judgment on the

Pleadings be **granted**.

## III. CONCLUSION

For the reasons stated therein, it is hereby

**RECOMMENDED**, that the Motion for Judgment on the Pleadings (Dkt. No. 25) be **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   September 5, 2006
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge